**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

YOAV SEGEV,

          Plaintiff,

v.

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE; MEREDITH
WEENICK; VICTOR A. CLAY; and
HARVARD UNIVERSITY POLICE
DEPARTMENT,

          Defendants.

Case No. 1:25-cv-12020-RGS

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................3

ARGUMENT .........................................................................................................................5

I.     Mr. Segev's Deliberate Indifference Claim Fails ..............................................5

      A.     The October 18 Incident Does Not Establish A Hostile Educational Environment .......................................................................................... 5

      B.     Harvard Was Not Deliberately Indifferent ............................................ 9

      C.     Other Incidents That Mr. Segev Did Not Witness Or Experience Do Not Save His Claim ......................................................................................... 11

II.    Mr. Segev's Direct Discrimination Claim Fails ...............................................12

III.   Mr. Segev Has Not Alleged Viable Contract Claims .......................................14

IV.   Mr. Segev's Section 1983 And Conspiracy Claims Must Be Dismissed .........................18

      A.     Mr. Segev Cannot State A Claim Under Section 1983......................... 18

      B.     The Amended Complaint Contains No Allegations Of Relevant Conduct By Ms. Weenick Or Mr. Clay.................................................................. 20

      C.     No Conspiracy Claim Can Survive Dismissal ...................................... 21

CONCLUSION...................................................................................................................23

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aguoji v. Harvard University*,
   931 N.E.2d 514 (Table), 2010 WL 3170761 (Mass. App. Ct. Aug. 12, 2010)........................19

*Alicea v. Machete Music*,
   744 F.3d 773 (1st Cir. 2014)...............................................................................................15, 16

*Alston v. Spiegel*,
   988 F.3d 564 (1st Cir. 2021).........................................................................................21, 22, 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................................8

*Barkhordar v. President and Fellows of Harvard College*,
   544 F. Supp. 3d 203 (D. Mass. 2021) ......................................................................................15

*Brown v. Suffolk University*,
   2021 WL 2785047 (D. Mass. Mar. 31, 2021)...........................................................................14

*Dartmouth Review v. Dartmouth College*,
   889 F.2d 13 (1st Cir. 1989)........................................................................................................13

*Davis v. Monroe County Board of Education*,
   526 U.S. 629 (1999)...................................................................................................5, 6, 10, 11

*Doe v. Brown University*,
   43 F.4th 195 (1st Cir. 2022)......................................................................................................13

*Doe v. Emerson College*,
   271 F. Supp. 3d 337 (D. Mass. 2017) ......................................................................................11

*Doe v. Harvard University*,
   462 F. Supp. 3d 51 (D. Mass. 2020) ........................................................................................17

*Doherty v. American International College*,
   2019 WL 1440399 (D. Mass. Mar. 31, 2019)...........................................................................11

*Earle v. Benoit*,
   850 F.2d 836 (1st Cir. 1988).....................................................................................................21

*Felber v. Yudof*,
   851 F. Supp. 2d 1182 (N.D. Cal. 2011) ...................................................................................12

*Feliciano-Hernández v. Pereira-Castillo*,
   663 F.3d 527 (1st Cir. 2011).....................................................................................................19

*Fitzgerald v. Barnstable School Commission*,
    504 F.3d 165 (1st Cir. 2007) ...................................................................6, 8, 9, 10

*G. v. Fay School*,
    931 F.3d 1 (1st Cir. 2019) ......................................................................14, 15, 17

*Hankey v. Town of Concord-Carlisle*,
    136 F. Supp. 3d 52 (D. Mass. 2015) ...............................................................6

*Harvard Crimson, Inc. v. President and Fellows of Harvard College*,
    840 N.E.2d 518 (Mass. 2006) .........................................................................19

*Harvard Law School Coalition for Civil Rights v. President and Fellows of
    Harvard College*,
    595 N.E.2d 316 (Mass. 1992) .........................................................................16

*Haywood v. Fitchburg Public Schools*,
    2025 WL 2734748 (D. Mass. Sept. 25, 2025) ...............................................8

*Insulet Corp. v. EOFlow Co., Ltd.*,
    755 F. Supp. 3d 70 (D. Mass. 2024) ..............................................................21

*Karasek v. Regents of University of California*,
    956 F.3d 1093 (9th Cir. 2020) ........................................................................10

*Kentucky v. Graham*,
    473 U.S. 159 (1985) ........................................................................................20

*Kestenbaum v. President and Fellows of Harvard College*,
    743 F. Supp. 3d 297 (D. Mass 2024) ..........................................11, 12, 13, 14, 15

*Kurker v. Kassler*,
    805 N.E. 531 (Table), 2004 WL 556959 (Mass. App. Ct. Mar. 22, 2004) ...........23

*Landau v. Corporation of Haverford College*,
    2025 WL 1796473 (E.D. Pa. June 30, 2025) ..............................................7, 12

*Lavigne v. Great Salt Bay Community School Board*,
    146 F.4th 115 (1st Cir. 2025) ....................................................................18, 21

*Lindke v. Freed*,
    601 U.S. 187 (2024) ........................................................................................18

*Liviz v. President and Fellows of Harvard College*,
    2019 WL 608839 (D. Mass. Feb. 13, 2019) ..................................................18

*Louis D. Brandeis Center. for Human Rights Under Law v. President and*
*Fellows of Harvard College,*
    2024 WL 4681802 (D. Mass. Nov. 5, 2024) ....................................................13, 14

*M.L. by and through D.L. v. Concord School District,*
    86 F.4th 501 (1st Cir. 2023)......................................................................9, 10, 11

*Mandel v. Board of Trustees of California State University,*
    2018 WL 5458739 (N.D. Cal. Oct. 29, 2018)...............................................9

*Menard v. CSX Transportation, Inc.,*
    698 F.3d 40 (1st Cir. 2012)...........................................................................21

*Morgan v. Middlesex Sheriff's Office,*
    2014 WL 4104173 (D. Mass. Aug. 13, 2014) ..........................................20

*Ouelette v. Beaupre,*
    977 F.3d 127 (1st Cir. 2020).................................................................19, 21

*Pollard v. Georgetown School District,*
    132 F. Supp. 3d 208 (D. Mass. 2015) .......................................................6

*Porto v. Town of Tewksbury,*
    488 F.3d 67 (1st Cir. 2007)............................................................................9

*Rice v. President and Fellows of Harvard College,*
    663 F.2d 336 (1st Cir. 1981).................................................................18, 22

*Rocket Learning, Inc. v. Rivera-Sanchez,*
    715 F.3d 1 (1st Cir. 2013)............................................................................20

*Rogan v. Menino,*
    175 F.3d 75 (1st Cir. 1999)..........................................................................20

*Santiago v. Keyes,*
    839 F. Supp. 2d 421 (D. Mass. 2012) ......................................................20

*Schaefer v. Fu,*
    272 F. Supp. 3d 285 (D. Mass. 2017) ........................................................8

*Seklecki v. Center for Disease Control and Prevention,*
    635 F. Supp. 3d 15 (D. Mass. 2022) .........................................................23

*Stand With Us Center for Legal Justice v. Massachusetts Institute of Technology,*
    __ F.4th __, 2025 WL 2962665 (1st Cir. Oct. 21, 2025)................6, 8, 9, 10, 13, 23

*StandWithUs Center for Legal Justice v. Massachusetts Institute of Technology,*
    742 F. Supp. 3d 133 (D. Mass. 2024) .....................................................18

*Summers v. City of Fitchburg*,
   325 F. Supp. 3d 203 (D. Mass. 2018) ..................................................................23

*Thomas v. Harrington*,
   909 F.3d 483 (1st Cir. 2018) ..............................................................................23

*Thomas v. Whitcomb*,
   2025 WL 863058 (D. Mass. Mar. 19, 2025) .......................................................17

*Walgreen Co. v. Haseotes*,
   778 F. Supp. 3d 264 (D. Mass. 2025) .................................................................23

*Wentworth Precious Metals, LLC v. City of Everett*,
   2013 WL 441094 (D. Mass. Feb. 4, 2013) .........................................................21

*Wiener v. MIB Group, Inc.*,
   86 F. 4th 76 (1st Cir. 2023) ..................................................................................4

*Williams v. Northfield Mount Hermon School*,
   504 F. Supp. 1319 (D. Mass. 1981) ...............................................................21, 22

*Yakoby v. Trustees of University of Pennsylvania*,
   2025 WL 1558522 (E.D. Pa. June 2, 2025) .........................................................12

## STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 11(b)(3) ..............................................................................................21

Mass. Gen. Laws ch. 22C, § 63 ...........................................................................18, 19

Mass. Gen. Laws ch. 265, § 13A ..................................................................................4

Mass. Gen. Laws ch. 265, § 37 ...............................................................................4, 7

## **INTRODUCTION**

This case arises from a single event—an October 18, 2023, altercation among several Harvard graduate students.  Yoav Segev, then a first-year Harvard Business School student, was using his phone to record video footage of a protest on campus.  Mr. Segev alleges he was surrounded by the protesters and then pushed, grabbed, and struck by one or more of them before he exited the area.  In the days, weeks, and months that followed this episode, Harvard took steps to support Mr. Segev and undertook an investigation into what took place.  The Amended Complaint concedes that—as a part of its investigation—Harvard, including the Harvard University Police Department ("HUPD"), coordinated and shared information with the FBI, the Boston Police Department, and the Suffolk County District Attorney's office.  The Amended Complaint also acknowledges that Harvard responded to Mr. Segev's efforts to file a complaint under certain Harvard policies and, when he ultimately declined to do so, Harvard engaged an outside law firm to conduct an investigation.  The Amended Complaint further admits that the investigation included a review of video evidence, communications with Mr. Segev's counsel, and an interview with Mr. Segev.  And, as Mr. Segev is aware, the investigation and the confidential disciplinary proceedings undertaken by Harvard concluded prior to Mr. Segev or the other Harvard students involved in the altercation graduating in May 2025.

Noticeably absent from Mr. Segev's 126-page, 514-paragraph Amended Complaint are a range of allegations that—had they been true—might have bolstered his claims.  There is no allegation that Mr. Segev had any subsequent interaction with any Harvard student involved in this altercation.  There is no nonconclusory allegation of any other antisemitic conduct directed toward Mr. Segev in his two years at Harvard.  And, most tellingly, Mr. Segev does not allege that Harvard failed to take action in response to the October 18 altercation—the Amended Complaint concedes

1

extensive action by Harvard in response (although it omits a great deal more that Harvard did to support Mr. Segev).

Instead, the complaint reflects Mr. Segev's dissatisfaction with the actions he admits Harvard took.  And the Amended Complaint attempts to minimize the significant steps Harvard has taken to address antisemitism.[1]  While Mr. Segev is entitled to his opinion regarding Harvard's actions, Harvard's response to the single incident in which he was involved, while deemed inadequate by Mr. Segev, was more than sufficient to satisfy the requirements of Title VI.  Even accepting his allegations as true and drawing all reasonable inferences in his favor, Mr. Segev's claims do not plausibly state a claim for relief.

*First*, the Amended Complaint does not come close to establishing that Mr. Segev was exposed to a hostile educational environment or was deprived of any educational opportunity, much less that Harvard's response to the October 18 incident was deliberately indifferent to either of these unmet conditions.  Rather, Mr. Segev's chief complaint is that he is dissatisfied with Harvard's efforts to support him, the investigations it undertook, and the outcome of those investigations.  Subjective dissatisfaction falls far short of establishing a Title VI violation.

*Second*, as this Court has already held in prior cases involving the October 18 incident, there is no basis for a claim of direct discrimination.

*Third*, the breach of contract and implied covenant claims fail because Mr. Segev fails to identify any specific contract that Harvard allegedly breached or that any of the policies identified in the Amended Complaint created any contract between Harvard and Mr. Segev.  In fact, Mr. Segev's allegations demonstrate that Harvard followed its policies.

---

[1]     *See, e.g.*, *University actions and commitments*, Harvard University Presidential Task Force on Combating Antisemitism and Anti-Israeli Bias, https://www.harvard.edu/task-force-on-antisemitism/#actionsandcommitments (last visited Oct. 27, 2025).

*Fourth*, the claim under Section 1983 fails because none of the defendants are state actors. A Massachusetts statute allowing HUPD officers to be designated as special state police officers does not make Harvard, the HUPD, or either of the individual defendants a state actor. Even if they were, all defendants would be entitled to immunity. And the two individual defendants must also be dismissed because the Amended Complaint fails to allege any specific conduct by either that could give rise to liability.

*Finally*, the Amended Complaint does not meet the most basic requirements to plead a conspiracy—two or more independent people acting with a shared purpose—and it sets forth no allegations from which the Court could plausibly infer an agreement to deprive Mr. Segev of his constitutional rights or otherwise commit a tort against him.

## **BACKGROUND**

As alleged in the Complaint, on October 18, 2023, a "die in" protest took place at the Harvard Business School. *See* FAC ¶¶ 143, 147.[2] Mr. Segev used his phone to capture video footage while walking through the demonstration. *See id.* ¶¶ 150-152. Some of the protesters approached Mr. Segev, sought to block his view and his camera with their bodies and scarves, and encircled him, limiting his ability to move freely through the protest. FAC ¶¶ 151, 154-155. By Mr. Segev's account, after his freedom of movement was limited, Mr. Segev was touched, pushed, grabbed, and struck by one or more of the protesters. *See id.* ¶¶ 155-158. Protesters, including those who surrounded Mr. Segev, also shouted "get out," "exit," and "shame" at Mr. Segev during the interaction. *Id.* ¶¶ 151, 155, 158. Mr. Segev then exited the area and took a scheduled midterm exam. *See id.* ¶ 158.

---

[2]    For purposes of this motion, Harvard treats as true the factual allegations in the First Amended Complaint ("FAC").

Mr. Segev reported the October 18 incident to both the FBI and HUPD, which then launched investigations. *See* FAC ¶ 176. The FBI declined to pursue federal civil rights charges, and HUPD filed an application for a criminal complaint against two Harvard students involved in the October 18 altercation in Boston Municipal Court's Brighton Division. FAC ¶ 230; Ex. A at 1, 12; Ex. B.[3] On May 9, 2024, both students were charged with the misdemeanor offenses of Assault and Battery in violation of Mass. Gen. Laws ch. 265, § 13A, and Civil Rights Violation in violation of Mass. Gen. Laws ch. 265, § 37. FAC ¶ 233.

On February 10, 2025, the Massachusetts state court dismissed the civil rights charges, finding "there was insufficient evidence presented at the hearing of any recognizable constitutional right or statutory right that was interfered with" and "insufficient evidence of any willful (particular purpose) [conduct] to interfere with any recognized constitutional or statutory right." *Commonwealth v. Bharmal*, No. 2408 CR 0355 (Bos. Mun. Ct. Feb. 24, 2025); *Commonwealth v. Tettey-Tamaklo*, No. 2408 CR 0356 (Bos. Mun. Ct. Feb 24, 2025); Ex. C. Thereafter, the court ordered pretrial diversion, with the requirement that both students perform 80 hours of community service and attend eight hours of anger management classes. FAC ¶ 240. On July 25, 2025, the court dismissed the remaining charges. Ex. A at 11, 22.

Aside from filing an application for criminal charges in state court, Harvard responded through its own internal processes. In the days following October 18, Mr. Segev provided information about the altercation to Harvard Law School and Harvard Divinity School (the graduate schools attended by two Harvard students Mr. Segev identified as involved in the

---

[3]    The Court may take judicial notice of court records. *See Wiener v. MIB Grp., Inc.*, 86 F. 4th 76, 81 n.3 (1st Cir. 2023). Because these records, while public, can only be accessed in hard copy at the Brighton Division of the BMC, copies of the referenced court records are attached to the Declaration of Felicia H. Ellsworth filed herewith. All "Ex." citations are to the exhibits to that Declaration.

4

altercation).  ¶¶ 173-174.  Wishing to remain anonymous, Mr. Segev declined at that time to file a formal complaint against either student under applicable Harvard policies. *Id.* ¶ 175.  (Harvard's Non-Discrimination and Anti-Bullying Policies ("NDAB") do not permit complainants to "remain anonymous or prevent their identity from being disclosed to the respondent." Ex. D.[4])  Despite the fact that Mr. Segev did not pursue a formal complaint, Harvard engaged an outside law firm to investigate the matter, FAC ¶¶ 19, who met with Mr. Segev's counsel, collected evidence regarding the October 18 incident, and interviewed Mr. Segev, FAC ¶¶ 183-187.  The two Harvard students charged in state court in connection with the October 18 altercation went through disciplinary proceedings conducted by the Harvard schools in which they were enrolled prior to their graduation. *See id.* ¶¶ 18, 195, 225.  All three students (including Mr. Segev) graduated from their respective Harvard schools in May 2025. *Id.* ¶¶ 35, 247-248.

## ARGUMENT

### I.  MR. SEGEV'S DELIBERATE INDIFFERENCE CLAIM FAILS

#### A.  The October 18 Incident Does Not Establish A Hostile Educational Environment

Mr. Segev's experience on October 18 fails to state a Title VI claim based on student-on-student conduct.  To establish such a claim, a plaintiff must allege conduct "so severe, pervasive, and objectively offensive" that it "had the systemic effect of denying the victim equal access to an educational program or activity." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651-652 (1999).  And a plaintiff must allege that he was deprived of the educational opportunity *because*

---

[4]    Mr. Segev's Amended Complaint incorporates these policies by reference, FAC ¶¶ 18-19, 173-175, 195, 209, 250, 253-264, 272, 471, 474, and the policies are also publicly available through the Harvard Office of the Provost's website at: https://provost.harvard.edu/sites/g/files/omnuum3356/files/2025-07/non-discrimination_and_anti-bullying_policies.pdf.

*of* his protected characteristic. *Stand With Us Ctr. for Legal Just. v. Mass. Inst. of Tech.*, __ F.4th __, 2025 WL 2962665, at *11-12 (1st Cir. Oct. 21, 2025).

Courts are generally reluctant to hold that a single incident of alleged harassment, and a school's response to that single incident, can support a claim for deliberate indifference. *See Davis*, 526 U.S. at 652-653 ("Although, in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have such [a systemic] effect, we think it unlikely that Congress would have thought such behavior sufficient to rise to this level in light of the inevitability of student misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment."). Indeed, where—as here—"the alleged incident[] [was] perpetrated by other students," that "further undermines any inference of severe or pervasive harassment." *Stand With Us*, 2025 WL 2962665, at *14. Accordingly, in order for "a single instance of peer-on-peer harassment" to support a deliberate indifference claim, a plaintiff must demonstrate that the incident was "vile enough" and that the institution's response after learning of the incident, was "unreasonable enough" to create "the combined systematic effect of denying access to a scholastic program or activity." *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172-73 (1st Cir. 2007), *rev'd on other grounds*, 555 U.S. 246 (2009); *see also Pollard v. Georgetown Sch. Dist.*, 132 F. Supp. 3d 208, 230-31 (D. Mass. 2015) (single allegation that students "mocked [the plaintiff] for his religion and ethnicity with snide comments about Jews being massacred and stating the Holocaust was unsuccessful because [his] family survived" was insufficient to support Title VI claim); *Hankey v. Town of Concord-Carlisle*, 136 F. Supp. 3d 52, 66-67 (D. Mass. 2015) (single "isolated incident" insufficient for Title IX claim).

The Amended Complaint fails to meet that demanding standard. Instead, Mr. Segev alleges he was confronted by individuals who took issue with his efforts to film protesters at close range,

and that, in their effort to block his camera and remove him from the area, these individuals pushed, grabbed, and struck him, while shouting "get out," "exit," and "shame." FAC ¶¶ 146, 150-151, 153, 155-158. Even accepting Mr. Segev's allegations as true, this single episode does not establish the type of severe student-on-student conduct necessary to give rise to a Title VI claim.

Further, Mr. Segev's allegations regarding the October 18 incident do not establish that it was based on his membership in a protected class (as opposed to a reaction to his proximity and filming, *cf.* FAC ¶¶ 150-153). The Amended Complaint alleges that "the October 18 Demonstration protesters harassed and physically assaulted [him]—*because he was Jewish.*" FAC ¶ 144. The sole fact pleaded in support of this conclusion is that, during the incident, "[h]e was wearing a blue bracelet, a public symbol of his Israeli identity and his solidarity with his homeland." FAC ¶ 146. But the Amended Complaint contains no allegations that the individuals involved—or anyone else—would or should have understood the bracelet to be connected to Israel, *cf.* FAC ¶ 146, nor that Mr. Segev's Jewish identity or Israeli nationality was otherwise known to the individuals involved. These conclusory assertions do not plausibly establish that the incident occurred *on the basis of* Mr. Segev's membership in a protected class. Indeed, the state court dismissed the criminal civil-rights charges for a lack of probable cause, finding insufficient evidence of any intent by either defendant "to interfere with any recognized constitutional or statutory right." *See supra* at 4; Ex. C; Mass. Gen. Laws. ch. 265, § 37.

Likewise, the allegations of a handful of online interactions discussing the events of October 18 do not move the needle. *See* FAC ¶¶ 160-167; *see also Landau v. Corp. of Haverford Coll.*, 2025 WL 1796473 (E.D. Pa. June 30, 2025), at *4-6 (discussing the challenges presented by social media posts, including whether an educational institution "could regulate students' and faculty's private social media content"). Moreover, Mr. Segev does not even allege that Harvard

was aware of the majority of these interactions.  FAC ¶¶ 160-165; *See, e.g.*, *Stand With Us*, 2025 WL 2962665, at \*14 ("[P]laintiffs fail to plausibly allege that MIT had any knowledge of these isolated events" or "that they or others brought the specific, identified incidents of antisemitism to the attention of MIT officials who could take corrective action."); *Fitzgerald*, 504 F.3d at 171 (requirement that "educational institution had actual knowledge" of the alleged harassment). And most of the interactions the Amended Complaint describes as "harassing" were, in fact, statements that *did not mention Mr. Segev at all*, but instead expressed support for, or attested to the good character of, the other students involved in the altercation.  *See, e.g.*, FAC ¶ 165 & n.31 (incorporating statement "in support" of other student by reference).  Beyond restating a legal conclusion, Mr. Segev does not allege facts establishing that any of these interactions occurred on the basis of his Jewish identity or Israeli nationality.  *See Stand With Us*, 2025 WL 2962665, at \*11 ("[C]onclusory allegations of antisemitic animus [] are 'not entitled to be assumed true.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009))); *see also Schaefer v. Fu*, 272 F. Supp. 3d 285, 288 (D. Mass. 2017) (allegations of conduct not "based upon" protected characteristic insufficient to support claim).

Finally, the Amended Complaint fails entirely to allege that Mr. Segev lost any educational opportunity as a result of the October 18 incident, an essential element of a Title VI claim.  While the complaint restates the legal standard no fewer than eight times, FAC ¶¶ 31, 414, 425, 445, 448, 461, 466, 469, it does not allege any specific educational opportunity Mr. Segev lost, let alone the systemic effect on equal access required to make out a claim under Title VI.  *See Fitzgerald*, 504 F.3d at 172-173, 173 n.3; *Stand With Us*, 2025 WL 2962665, at \*13 ("The requirement that the deprivation of educational access be systemic is key."); *Haywood v. Fitchburg Pub. Schs.*, 2025 WL 2734748, at \*6 (D. Mass. Sept. 25, 2025) ("[A] plaintiff must allege that the educational

environment became so inaccessible or intolerable that they were effectively compelled to withdraw."); *see also Mandel v. Bd. of Trs. of Cal. State Univ.*, 2018 WL 5458739, at *25-26 (N.D. Cal. Oct. 29, 2018) ("[T]he fact that some unidentified students self-censored and did not attend, participate or identify as Jewish [at] events because of their fear of hostility is not only fatally vague but also questionable as to the impact on their education."). The Amended Complaint also does not allege that Mr. Segev was subjected to any other physical contact or other form of harassment from the two individuals charged in connection with the October 18 incident (or any other Harvard student or affiliate) in the 19 months that he remained a student after the events of October 18.

### B.    Harvard Was Not Deliberately Indifferent

Even if the Amended Complaint had sufficiently alleged a hostile educational environment, no Title VI claim against Harvard can proceed unless Mr. Segev also alleges "deliberate indifference" on Harvard's part—that is, facts demonstrating that Harvard's response to the conduct at issue was "clearly unreasonable in light of the known circumstances." *Porto v. Town of Tewksbury*, 488 F.3d 67, 72-73 (1st Cir. 2007). The Amended Complaint demonstrates the opposite: it acknowledges that Harvard conducted an investigation into the October 18 incident. *See* FAC ¶¶ 172-96. Mr. Segev's objections to the timing, substance, and results of the investigation are insufficient to establish deliberate indifference. Title VI "does not require educational institutions to take heroic measures, to perform flawless investigations, [or] to craft perfect solutions." *Fitzgerald*, 504 F.3d at 174; *see also Stand With Us*, 2025 WL 2962665, at *14 ("A university is deliberately indifferent under Title VI only if its response to known harassment is 'so lax, so misdirected, or so poorly executed as to be clearly unreasonable under the known circumstances.'" (quoting *D.L.*, 86 F.4th at 511)); *Porto*, 488 F.3d at 73 ("[A] claim that the school system could or should have done more is insufficient to establish deliberate indifference.");.

Mr. Segev acknowledges that HUPD worked with the FBI and others to investigate the October 18 incident and that Harvard retained an outside law firm to conduct an investigation. FAC ¶¶ 176, 183. To the extent Mr. Segev objects to the timing of Harvard's investigation—which concluded before any of the involved students graduated—such determinations are within an educational institution's reasonable discretion. *See M.L. by and through D.L. v. Concord Sch. Dist.*, 86 F.4th 501, 512 (1st Cir. 2023); *see also Fitzgerald*, 504 F.3d at 174 (Title VI "was not intended either to pretermit thoughtful consideration of students' rights or to demand a gadarene rush to judgment" especially, as is the case here, "in situations involving charges of peer-on-peer harassment," where the school "has obligations not only to the accuser but also to the accused."). To the extent Mr. Segev objects to his lack of involvement—which stems from his own decision not to file a formal complaint under policies that would have entitled him to participate—the Amended Complaint acknowledges that in the investigation Harvard conducted, the University did coordinate with Mr. Segev's counsel and interviewed Mr. Segev. FAC ¶¶ 183-188. Mr. Segev's allegation, then, is *not* that Harvard failed to take action, but simply that he disagrees with the actions taken after the investigation—because it did not result in "public remedial or disciplinary action" against other students. *Id.* ¶ 245. That dissatisfaction cannot support a claim. *See, e.g.*, *Stand With Us*, 2025 WL 2962665, at *14-16 (No Title VI liability based on "claim that MIT 'dragged its feet,' 'took only minimal action' and 'fail[ed] to discipline' student protestors" because "Title VI does not require schools to craft perfect solutions, nor does it entitle students to their preferred remedial demands" (cleaned up)); *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1109-1100 (9th Cir. 2020) ("We might have handled the situation differently, but the Supreme Court has instructed us to 'refrain from second guessing the disciplinary decisions made by school administrators' unless those decisions were 'clearly unreasonable.'" (quoting *Davis*, 526

U.S. at 648)); *Doherty v. Am. Int'l Coll.*, 2019 WL 1440399, at *5 (D. Mass. Mar. 31, 2019) ("A school satisfies its obligations if it engages in a reasonable process for investigating and addressing claims of [] harassment." (quoting *Doe v. Emerson Coll.*, 271 F. Supp. 3d 337, 356 (D. Mass. 2017))); *see also Doe*, 271 F. Supp. 3d. at 355 ("Title IX does not guarantee that an investigation will yield the outcome that a complainant desires.").

## C. Other Incidents That Mr. Segev Did Not Witness Or Experience Do Not Save His Claim

Mr. Segev also cannot state a deliberate-indifference claim based on the allegations in the Amended Complaint—copied largely verbatim from complaints in other disputes previously before this Court—that recount incidents in which Mr. Segev does not allege he was involved. *See, e.g.*, FAC ¶¶ 42-142, 286-297, 299-334, 343-384, 399-401.[5] To plead deliberate indifference by an educational institution, a plaintiff must plausibly allege that "the institution's response … caused *the student* to undergo harassment or ma[d]e *the student* vulnerable to it." *D.L.*, 86 F.4th at 511 (citing *Davis*, 526 U.S. at 646) (emphases added). The focus must be on alleged harassment that the plaintiff himself "witnessed" or of which he was a "target[]." *Kestenbaum v. President & Fellows of Harvard Coll.*, 743 F. Supp. 3d 297, 308 n.10 (D. Mass 2024). Even when plaintiffs are "disappointed and even angry" at a university's response to an incident, they cannot state a

---

[5]     The Amended Complaint also demonstrates through its allegations the significant steps Harvard has taken to address antisemitism—and other forms of discrimination—across its campuses. While only a small portion of these efforts are included in the Amended Complaint, those that were include: clarifying and expanding the University's guidance on permissible protest activities, FAC ¶ 137, 268; responding to campus disruptions and disciplining students who failed to follow University policies, *id.* ¶¶ 103, 111, 192, 334; adopting the International Holocaust Remembrance Alliance ("IHRA") definition of antisemitism, *id.* ¶ 198; and the creation of a Presidential Task Force on Combating Antisemitism and Anti-Israel Bias, which released a detailed report identifying areas where additional steps might be required, *id.* ¶¶ 27, 381.

claim absent "allegations that this incident affected [them] in a way that manifested any concrete harm." *Landau*, 2025 WL 1796473, at *14 (E.D. Pa. June 30, 2025).

Mr. Segev alleges no facts from which this Court can infer that he was subjected to discrimination based on the incidents he describes that have nothing to do with the October 18 incident—many of which occurred before he enrolled at Harvard, *see, e.g.*, FAC ¶¶ 42-65; *see also Yakoby v. Trs. of Univ. of Penn.*, 2025 WL 1558522, at *7 (E.D. Pa. June 2, 2025) ("Plaintiffs spend an inordinate amount of space expounding on long-past injustices and incidents, some dating as far back as 1993."). Rather, Mr. Segev alleges a "broad swath of … conduct" that occurred "at times and in places where [he] w[as] not present," *Kestenbaum*, 743 F. Supp. 3d at 308 n.10 (quoting *Felber v. Yudof*, 851 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011), and that is detached from any claim that he was denied access to educational services, *see id.* (referring to "specific[]" allegations of events that plaintiffs "witnessed (or were targets of), [that] caused plaintiffs to be denied educational opportunities"). Mr. Segev's allegations about long-ago or unrelated events with no identifiable link to his experience or education simply cannot supply the basis for a Title VI deliberate indifference claim. Nor does Mr. Segev plausibly allege that Harvard's response to alleged incidents involving only other students deprived him of any educational opportunities or contributed in any way to the harm he claims he suffered as a result of the October 18 incident. *See supra* at 8-9.

## II.    MR. SEGEV'S DIRECT DISCRIMINATION CLAIM FAILS

The Court should dismiss the direct discrimination claim because the Amended Complaint fails to allege facts supporting Mr. Segev's conclusory assertion that Harvard "directly and intentionally discriminated against" him by investigating his complaint about the October 18 incident in a manner that was ultimately not to his satisfaction. FAC ¶¶ 462, 463. Even if Mr. Segev were able to allege that he was treated differently from others—which he does not—that

would still be insufficient because the "mere existence of disparate treatment … does not furnish adequate basis for an inference that the discrimination was racially motivated." *Louis D. Brandeis Ctr. for Human Rights Under Law v. President & Fellows of Harvard Coll.*, 2024 WL 4681802, at *4 (D. Mass. Nov. 5, 2024) (quoting *Dartmouth Rev. v. Dartmouth Coll.*, 889 F.2d 13, 20 (1st Cir. 1989) (subsequent history omitted)).  Instead, Mr. Segev was required to "plausibly establish[] that Harvard took [the alleged] actions *because of* some anti-Jewish or anti-Israeli discriminatory animus."  *Id.*  He did not do so.  None of the comparators identified in the Amended Complaint— which almost universally involve faculty and institutional speech—come close to establishing disparate treatment of similarly situated students.  *See* FAC ¶¶ 286-332.  This is unsurprising, because the vast majority of these allegations are copied verbatim from the complaint in *Kestenbaum* and similarly seek to advance a claim of "viewpoint discrimination," which this Court previously held "is not actionable under Title VI."  743 F. Supp. 3d. at 311; *see also See Stand With Us*, 2025 WL 2962665, at *8, *12.

As this Court explained when it dismissed the same direct discrimination claim in *Brandeis Center* under Rule 12, the assertion "that Harvard invented a policy to delay disciplinary action pending resolution of criminal proceedings" does not "create[] a reasonable inference of bias" without a showing that "similarly situated comparator[s]" of different races and national origins were treated differently.  *Brandeis Center*, 2024 WL 4681802, at *4.  Mr. Segev's complaint "do[es] not identify reasonably comparable analogs," *Kestenbaum*, 743 F. Supp. 3d at 311, that is, other situations where "the nature of the infraction and knowledge of the evidence by college officials [was] sufficiently similar" to the facts Mr. Segev alleges but Harvard's treatment was more favorable, *id.* at 310 (quoting *Doe v. Brown Univ.*, 43 F.4th 195, 207 (1st Cir. 2022)).  Similarly, the allegation that Harvard "obstructed" the Suffolk County District Attorney's criminal

case, *see* FAC ¶¶ 229-243, 463, is untrue, unsupported, and irrelevant. In fact, it is contradicted by the complaint itself in which Mr. Segev alleges that Harvard coordinated with the FBI, the Boston Police Department, and the District Attorney's office to investigate the October 18 incident, *see* FAC ¶¶ 130-131, 176, 238, and it was HUPD that applied for the criminal complaint that issued as a result of that altercation, Ex. B. Although the Amended Complaint omits months of further cooperation between Harvard and the District Attorney's office, the corpus of fact it does include fails to allege any actual affirmative acts taken by Harvard that would amount to "obstruction"; indeed, it does not even identify additional steps Harvard could have taken or information it might have provided to the District Attorney. In any event, Mr. Segev's dissatisfaction with how Harvard contributed to a local criminal prosecution that was outside its control cannot establish a Title VI claim as Mr. Segev has not alleged (nor could he) any similarly situated comparators. *See Brandeis Center*, 2024 WL 4681802, at *4. Because Mr. Segev "fails to adequately limn a comparator Title VI claim," this claim should be dismissed. *Kestenbaum*, 743 F. Supp. 3d at 311.

## III. MR. SEGEV HAS NOT ALLEGED VIABLE CONTRACT CLAIMS

The Amended Complaint also contains no discernible allegation that Harvard breached an enforceable contract in responding to the October 18 incident (or in any other respect). While a special species of contract "may be memorialized in a student handbook" or policy, *G. v. Fay Sch.*, 931 F.3d 1, 12 (1st Cir. 2019), to determine whether a university handbook or policy is contractually enforceable, "Massachusetts courts employ the standard of reasonable expectation, that is, what meaning the party making the manifestation should reasonably expect the other party to give the terms," *id.* (cleaned up). Where a student's breach of contract claim "is based on statements in the Policies that are not tethered to any promise to act or provide services to [the] students, the claim is not actionable." *Kestenbaum*, 743 F. Supp. 3d at 311 n.15; *see also Brown*

*v. Suffolk Univ.*, 2021 WL 2785047, at \*6 (D. Mass. Mar. 31, 2021) (no contract where plaintiff failed to identify "any particular document, handbook, or manual that includes definite and certain promises about the university's environment or services").

The Amended Complaint does not specify which Harvard policy or handbook Harvard allegedly breached, averring to at least fourteen different policies from more than five distinct Harvard schools. FAC ¶¶ 250-285, 474. In fact, Mr. Segev claims that the "express and implied contractual relationship" between him and Harvard is "not limited to" the grab bag of policies explicitly referenced. *Id.* ¶ 471. Yet, despite all this exegesis and base-covering, the Amended Complaint utterly fails to state a claim for breach of contract, because it nowhere alleges which of these documents—or any specific provision(s) within them—form an enforceable contract that could supply the basis for the breach claim, *see* FAC ¶ 470-475. "[A] plaintiff cannot merely 'allege, in conclusory fashion, that the defendant breached the contract'" but rather must "describ[e], with substantial certainty, the specific contractual promise the defendant failed to keep." *Alicea v. Machete Music*, 744 F.3d 773, 783 (1st Cir. 2014) (cleaned up) (affirming dismissal of breach of contract claim on this basis); *see also Barkhordar v. President & Fellows of Harvard Coll.*, 544 F. Supp. 3d 203, 212 (D. Mass. 2021) ("Plaintiffs have not identified the specific terms that their university should have reasonably expected students to understand to be an offer of in-person instruction and access to on-campus facilities."). Mr. Segev's allegations do not approach that standard.[6]

---

[6]    Compounding this pleading deficiency, many of the policies Mr. Segev quotes are "not tethered to any promise to act or provide services to [the] students," *Kestenbaum*, 743 F. Supp. 3d at 311 n.15, and instead are precisely the type of "generalized, aspirational statements that are insufficiently definite" to form a contractual relationship, *Fay Sch.*, 931 F.3d at 12. *See, e.g.*, FAC ¶ 265 (Harvard's University-Wide Statement on Rights and Responsibilities describes Harvard as "a community ideally characterized by free expression, free inquiry, intellectual honesty, respect for the dignity of others, and openness to constructive change").

Mr. Segev does not identify any policy in the Amended Complaint that grants a legally enforceable right to Mr. Segev.  Indeed, the majority of the policies cited in the Amended Complaint could not give rise to a contract with Mr. Segev because they did not apply to him at all.  Mr. Segev—a former student at Harvard Business School—never explains how, for example, the Harvard College handbook or the Faculty of Arts and Sciences Free Speech Guidelines could result in a "reasonable expectation" sufficient to create a contract between Mr. Segev and Harvard. *See* FAC ¶¶ 271, 274-276, 474.  Moreover, the Amended Complaint does not specifically connect the October 18 incident (or any other aspect of Mr. Segev's experience at Harvard) to the policies discussed.  *Id.* at 474.  The policies cited in the Amended Complaint focus variously on "unauthorized occupation of buildings," *id.* ¶¶ 267, 269-270, 277, "demonstrations and protests … in classrooms," "libraries," and other campus buildings, *id.* ¶ 268, 277, disruptions of events or speakers, *id.* ¶¶ 275, 278, and the obligations of recognized student organizations, *id.* ¶¶ 282-283.  And at least one of the policies Mr. Segev cites was issued months *after* the October 18 episode. *Id.* ¶ 268.  As to these inapplicable policies, even if they might be contractual in nature for some purposes (such as, for example, establishing students' consent to certain obligations and restrictions regarding their own conduct), there is no plausible basis to assert that they vested Mr. Segev with a free-roving contractual right to demand Harvard enforce them in a specific manner (or at all) against other members of the university community.  *See, e.g.*, *Alicea*, 744 F.3d at 784 ("Merely incidental beneficiaries lack standing to enforce a contract." (collecting cases)); *Harvard Law Sch. Coal. for Civ. Rights v. President & Fellows of Harvard Coll.*, 595 N.E.2d 316, 319 (Mass. 1992) (coalition and individual students could not bring breach of contract claim because students did not have contract with law school with respect to faculty hiring).

Even if Mr. Segev had adequately pleaded the existence of an applicable, enforceable contract with Harvard that would apply to Harvard's response to the October 18 incident, the complaint nonetheless fails to explain how this contract was breached. To the extent Mr. Segev attempts to ground this claim in Harvard's NDAB policies, *see supra* at 5, that claim is foreclosed by the plain language of those policies.[7] Mr. Segev alleges that he sought to file complaints about the October 18 incident with Harvard Law School and Harvard Divinity School, but did not because he "preferred to proceed anonymously." FAC ¶¶ 173-175. But the NDAB explicitly states that complainants cannot remain anonymous. Ex. D § VI.C.1 (pp. 6, 17). Any purported reliance on the NDAB's procedures, *see, e.g.*, FAC ¶ 259, when Mr. Segev did not avail himself of this policy, would be misplaced. Mr. Segev's claim that nineteen months later, he changed his mind and sought to file a non-anonymous complaint, but "Harvard told him it was too late because Harvard had already completed an investigation into the matter," fares no better. FAC ¶ 195.[8] Again, the NDAB explicitly states that a complaint may be dismissed without further investigation where—as Mr. Segev concedes, FAC ¶¶ 183-184, 186-188, 195—the University has already investigated the issues involved. *See* Ex. D § VI.C.2.a (pp. 7, 18). Stated simply, Harvard cannot be in breach of a policy by explicitly following the plain language of that policy. *See Doe v. Harvard Univ.*, 462 F. Supp. 3d 51, 65 (D. Mass. 2020).

---

[7]    Mr. Segev never explains the basis for any "reasonable expectation" he may have drawn from the NDAB, when that document expressly states, "The Policy is not intended to, nor does it, create any contractual, legal, or other right for any individual and does not impose any contractual or legal obligation on the University." Ex. D § 1 (pp. 1, 11); *see Fay School*, 931 F.3d at 13 (no contract where enrollment contract expressly stated that school handbook "does not constitute a contract between [the student's family] and the School"); *Thomas v. Whitcomb*, 2025 WL 863058, at *10 (D. Mass. Mar. 19, 2025) (no breach of contract where school handbook "expressly stated that it was 'not a legal contract'").

[8]    The Amended Complaint states this complaint was filed "May 19, 2024," but this is a typographical error—the complaint was, in fact, filed on May 19, **2025**, mere days before Mr. Segev and the other individuals were scheduled to graduate.

The implied covenant of good faith and fair dealing attaches only where there is a contract; accordingly, because the various policies in Mr. Segev's unelaborated list are not contracts, there is no covenant to breach.  In any event, the claim fails wherever the covenant might attach, because the Amended Complaint nowhere states what specific events or conduct might have violated the covenant.  *See* FAC ¶¶ 476-478.  The Amended Complaint contains a single conclusory allegation that Harvard applies its various policies "in a bad faith and discriminatory way," without any supporting factual allegations.  FAC ¶ 477.  This unsupported allegation of a required element is insufficient to salvage the claim.  *Lavigne v. Great Salt Bay Cmty. Sch. Bd.*, 146 F.4th 115, 123 (1st Cir. 2025) ("[A] formulaic recitation of the elements of a cause of action will not do.").[9]

## IV.    MR. SEGEV'S SECTION 1983 AND CONSPIRACY CLAIMS MUST BE DISMISSED

### A.    Mr. Segev Cannot State A Claim Under Section 1983

The Section 1983 claims are untenable on their face because none of the Defendants acted under color of state law.  *Lindke v. Freed*, 601 U.S. 187, 194 (2024).  "Harvard is not a public institution and is not sufficiently intertwined with the Commonwealth of Massachusetts so as to meet the 'state action' requirement for a [Section] 1983 cause of action."  *Rice v. President & Fellows of Harvard Coll.*, 663 F.2d 336, 337 (1st Cir. 1981); *see also Liviz v. President & Fellows of Harvard Coll.*, 2019 WL 608839, at *1 (D. Mass. Feb. 13, 2019) ("Harvard does not fall under the 'color of state law' within the meaning of Section 1983.").

Mr. Segev alleges that HUPD *officers* act under color of state law if they "are 'sworn special state police officers.'" FAC ¶ 502 (quoting Mass. Gen. Laws ch. 22C, § 63).  Even if this

---

[9]    In the event that the Court dismisses the federal claims alleged in Mr. Segev's complaint, it should decline to exercise supplemental jurisdiction over his state law claims.  *See StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.*, 742 F. Supp. 3d 133, 144 (D. Mass. 2024), *aff'd*, 2025 WL 2962665.

18

were true, it would not transform HUPD into a state actor.  *See Harvard Crimson, Inc. v. President & Fellows of Harvard Coll.*, 840 N.E.2d 518, 524-525 (Mass. 2006) ("The fact that some individual HUPD officers have been appointed deputy sheriffs, or special State police officers, does not transform the HUPD, itself, into an agency of the Commonwealth such that it becomes subject to the mandates of the public records law."). The statute in question provides only that, in limited circumstances, HUPD officers might exercise certain state powers, and it cannot reasonably be construed to make HUPD answerable to claims under Section 1983.  *See Harvard Crimson*, 840 N.E.2d at 523 ("The powers conferred on employees who are so appointed are, by statute, far less extensive than the powers of regular police officers, … and they are vested in individual officers, not on the security department of the educational institution as a whole." (citation omitted)).[10]

The claims against Mr. Clay and Ms. Weenick should likewise be dismissed for lack of state action.  Even if *some* HUPD officers act under color of state law under *some* circumstances by virtue of Mass. Gen. Laws ch. 22C, § 63, it does not follow that all HUPD officers, or their supervisors, are always engaged in state action and therefore subject to Section 1983.  As discussed *infra*, the Amended Complaint alleges no facts regarding Ms. Weenick or Mr. Clay's role in the October 18 incident or Harvard's response.  Under Section 1983, a "supervisory liability [claim] must plead an 'affirmative link between the behavior of a subordinate and the action or inaction of his supervisor.'"  *Ouelette v. Beaupre*, 977 F.3d 127, 140 (1st Cir. 2020) (quoting *Feliciano-*

---

[10]    HUPD should also be dismissed from this case because HUPD is not a separate entity susceptible to being sued.  President and Fellows of Harvard College is the corporate body responsible for the entire educational institution that includes all of Harvard's constituent schools and departments, including HUPD.  *See Harvard Crimson*, 840 N.E.2d at 523 (HUPD is "a department within Harvard University").  All HUPD officers and employees are employed by Harvard University. *Aguoji v. Harvard Univ.*, 931 N.E.2d 514 (Table), 2010 WL 3170761, at *1-3 (Mass. App. Ct. Aug. 12, 2010) (discussing Harvard as the employer of HUPD officers).

*Hernández v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011)). No such link—or any conduct whatsoever by either Ms. Weenick or Mr. Clay—is alleged here.

While the failure to plead action under color of state law alone defeats Mr. Segev's claims, these claims suffer from further defects. *First*, even if Harvard and HUPD could be considered state actors, they cannot be sued for damages under Section 1983 as they are not "persons" and therefore would be immune from damages under the Eleventh Amendment. *See Santiago v. Keyes*, 839 F. Supp. 2d 421, 427 (D. Mass. 2012). *Second*, to the extent Mr. Segev attempts to sue Mr. Clay and Ms. Weenick in their "official" capacities, these claims (which seek only damages) are also barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169-170 (1985). And *third*, if Mr. Segev's claims against Mr. Clay and Ms. Weenick were individual-capacity claims, they fail to plausibly allege that Mr. Clay and Ms. Weenick were personally involved in any violation of his rights. *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999) ("[T]he liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions.").[11]

### B.    The Amended Complaint Contains No Allegations Of Relevant Conduct By Ms. Weenick Or Mr. Clay

Both Ms. Weenick and Mr. Clay should be dismissed as a defendants from this suit. The Amended Complaint does not allege any personal involvement by Ms. Weenick in the events of and after October 18. The only allegations directed to Ms. Weenick relate to her general role supervising (among other things) public safety at the University, FAC ¶¶ 134-142, and

---

[11]    *See also Morgan v. Middlesex Sheriff's Off.*, 2014 WL 4104173, at *4 (D. Mass. Aug. 13, 2014) (individual-capacity claim "must allege personal involvement of the defendant in the purported constitutional violation"). Furthermore, even if Mr. Segev could somehow rectify these deficiencies, Mr. Clay and Ms. Weenick would be entitled to qualified immunity because Mr. Segev cannot show that any actions they took violated any clearly-established right. *See Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 9-11 (1st Cir. 2013).

allegations—made on the basis of "information and belief" and implausible on their face—that Ms. Weenick instructed HUPD "*not* to intervene in the ongoing protests but instead to give anti-Israel protesters substantial leeway, and more so than any other campus groups would receive," FAC ¶ 159, and that Ms. Weenick instructed HUPD and Mr. Clay "to not cooperate with local authorities." *Id.* ¶ 486. These false assertions cannot justify the inclusion of Ms. Weenick as a defendant. *See Lavigne*, 146 F.4th at 127 ("[T]he phrase 'information and belief' does not excuse 'pure speculation.'" (quoting *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012)); *see also* Fed. R. Civ. P. 11(b)(3). The allegations relating to Mr. Clay are even thinner. Mr. Segev does not allege any action taken by Mr. Clay at all, let alone any action taken by Mr. Clay in connection with the October 18 events or Harvard's response to them. *Cf.* FAC ¶ 139-141. The mere fact that Mr. Clay was the Chief of HUPD on October 18 and remained in that role until May 2025 supplies no basis, on its own, for any form of individual liability. *Ouelette*, 977 F.3d at 140.

### C.      No Conspiracy Claim Can Survive Dismissal

The allegations of federal and state-law conspiracy do not pass muster. "[A] conspiracy is a 'combination of two or more persons acting in concert to commit an unlawful act.'" *Alston v. Spiegel*, 988 F.3d 564, 577 (1st Cir. 2021) (quoting *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988)). The law is clear that a conspiracy cannot be comprised of "two or more persons" acting on behalf of a single corporate entity: when employees act in the course of their employment, their actions are the actions of their common employer, and an employer cannot conspire with itself. *See Wentworth Precious Metals, LLC v. City of Everett*, 2013 WL 441094, at *14 (D. Mass. Feb. 4, 2013) ("When these employees acted in the course of their employment, they acted on behalf of [their employer], and a conspiracy of one fails to state a claim."); *see also Insulet Corp. v. EOFlow Co., Ltd.*, 755 F. Supp. 3d 70, 97 (D. Mass. 2024) (same under state law conspiracy); *Williams v. Northfield Mount Hermon Sch.*, 504 F. Supp. 1319, 1328-1329 (D. Mass. 1981) (federal

conspiracy claim cannot proceed where school officials acted within the scope of their normal duties).

Mr. Segev does not—because he cannot—plead the existence of a conspiracy. "[W]here officials of a school act in their capacities as such in disciplining a student, their actions are properly attributed to the school itself." *Williams*, 504 F. Supp. at 1329 n.10. The Complaint nowhere alleges that Ms. Weenick or Mr. Clay acted outside of their job duties, so their alleged actions can only be the actions of their employer, President and Fellows of Harvard College (and HUPD is a department within Harvard, *see supra* at 19 n.10). Harvard cannot conspire with itself. *See Rice*, 663 F.2d at 338 ("[T]he President and Fellows of Harvard College … is a single corporate entity and, therefore, unable to conspire with itself."). What is more, the Amended Complaint explicitly alleges that Harvard and Ms. Weenick control HUPD and that HUPD acts at their direction, FAC ¶¶ 133-142, 159, 242, conceding the point. Because the Amended Complaint alleges only actions properly attributed to Harvard, the Court must dismiss the conspiracy counts.

In any event, the Amended Complaint alleges only legal conclusions of conspiracy, shorn of the supporting facts the Federal Rules require. *See* FAC ¶¶ 6, 10, 482, 484, 487, 493, 496. Such "bald claims" and "[v]ague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss." *Alston*, 988 F.3d at 578. Indeed, the only purported act in furtherance of this conspiracy—that, at some unspecified time and in an unspecified manner, Ms. Weenick and Harvard "instructed" HUPD and Mr. Clay to "halt their investigation into Mr. Segev's assault," *see* FAC ¶¶ 486, 495, as part of a "larger conspiracy to deprive Mr. Segev and other Jewish students of the protection of law enforcement," FAC ¶ 10—is entirely unsupported by any facts alleged in the Amended Complaint. This type of speculative allegation does not

suffice. *See, e.g.*, *Seklecki v. CDC*, 635 F. Supp. 3d 15, 22-23 (D. Mass. 2022) (federal conspiracy); *Walgreen Co. v. Haseotes*, 778 F. Supp. 3d 264, 297 (D. Mass. 2025) (state conspiracy); *see also Kurker v. Kassler*, 805 N.E.531 (Table), 2004 WL 556959, at *2 (Mass. App. Ct.. Mar. 22, 2004) ("[A] conspiracy allegation based solely on a hope and a guess fails to state a claim on which relief may be granted.").

The conspiracy claims also fail for several additional reasons. Mr. Segev fails to allege a conspiratorial purpose "to deprive [him] of the equal protection of the laws." *Alston*, 988 F.3d at 577 (cleaned up); *see also Walgreen Co.*, 778 F. Supp. 3d at 297 (same for state conspiracy). As discussed above, *see supra* at 12-14, he does not plausibly allege intentional discrimination. Yet there can be no conspiratorial purpose without intent. *See Stand With Us*, 2025 WL 2962665, at *17-18. As to the state conspiracy claim, Mr. Segev alleges no underlying object tort. "Because it is vicarious liability, this type of civil conspiracy requires an underlying tort and the conspiracy consists in agreeing to, or assisting in, this underlying tort." *Thomas v. Harrington*, 909 F.3d 483, 490 (1st Cir. 2018) (cleaned up); *see also Summers v. City of Fitchburg*, 325 F. Supp. 3d 203, 212 (D. Mass. 2018) (claim dismissed because "[p]laintiffs have no independent claims asserting tort liability").

## **CONCLUSION**

The Court should dismiss Mr. Segev's Amended Complaint with prejudice.

DATED:  October 27, 2025

Respectfully Submitted,

*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth, BBO #665232
Jacob Tuttle Newman, BBO #712110
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
Felicia.Ellsworth@wilmerhale.com
Jacob.TuttleNewman@wilmerhale.com

*Counsel for President and Fellows of Harvard College, Meredith Weenick, Victor A. Clay, and Harvard University Police Department*

Mark A. Kirsch (*pro hac vice*)
Gina Merrill (*pro hac vice*)
KING & SPALDING LLP
1290 Avenue of the Americas
14th Floor
New York, NY 10104
Tel: (212) 790-5329
Fax: (212) 556-2222
mkirsch@kslaw.com
gmerrill@kslaw.com

*Counsel for President and Fellows of Harvard College*