IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YOAV SEGEV,<br><br>                              Plaintiff,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE; MEREDITH WEENICK; VICTOR A. CLAY; and HARVARD UNIVERSITY POLICE DEPARTMENT,<br><br>                              Defendants. | Case No. 1:25-cv-12020-RGS<br><br>Leave to file granted November 18, 2025 |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.    MR. SEGEV FAILS TO PLEAD A TITLE VI CLAIM ................................................................1

      A.    Mr. Segev Cannot Resuscitate His Deliberate Indifference Claim..........................1

      B.    Mr. Segev Fails To Adequately Allege A Title VI Direct Discrimination
            Claim........................................................................................................................5

II.   MR. SEGEV CONCEDES THAT HE DOES NOT AND CANNOT IDENTIFY A SPECIFIC
      CONTRACT OR PROMISE THAT HARVARD ALLEGEDLY BREACHED......................................6

III.  MR. SEGEV'S CIVIL RIGHTS AND CONSPIRACY CLAIMS FAIL SEVERAL TIMES OVER ..........8

      A.    Mr. Segev's Section 1983 Claim Finds No Support In The Cases He Cites...........8

      B.    Mr. Segev Concedes That He Has Failed To Allege Any Conspiracy....................9

IV.   DISMISSAL WITH PREJUDICE IS PROPER ...............................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Alicea v. Machete Music*,
    744 F.3d 773 (1st Cir. 2014)........................................................................................6

*Christensen v. Kingston School Commitee*,
    360 F. Supp. 2d 212 (D. Mass. 2005) .........................................................................7

*Coucelos v. City of Woburn*,
    2024 WL 4309378 (D. Mass. June 18, 2024)..............................................................2

*Davis v. Monroe County Board of Education*,
    526 U.S. 629 (1999).....................................................................................................2

*Doe v. Emerson College*,
    271 F. Supp. 3d 337 (D. Mass. 2017) .........................................................................5

*Doe v. Stonehill College, Inc.*,
    55 F.4th 302 (1st Cir. 2022).........................................................................................8

*Doherty v. American International College*,
    2019 WL 1440399 (D. Mass. Mar. 31, 2019)..............................................................5

*Fitzgerald v. Barnstable School Committee*,
    504 F.3d 165 (1st Cir. 2007)........................................................................................5

*Fleck v. Trustees of University of Pennsylvania*,
    995 F. Supp. 2d 390 (E.D. Pa. 2014) ..........................................................................8

*Hayes v. Town of Dalton*,
    2022 WL 17177729 (D. Mass. Nov. 23, 2022) ........................................................10

*Haywood v. Fitchburg Public Schools*,
    2025 WL 2734748 (D. Mass. Sept. 25, 2025) ............................................................4

*HB v. Monroe Woodbury Center School District*,
    2012 WL 4477552 (S.D.N.Y. Sept. 27, 2012)............................................................1

*Kestenbaum v. President and Fellows of Harvard College*,
    743 F. Supp. 3d. 297 (D. Mass. 2024) ...............................................................3, 6, 7

*Klunder v. Brown University*,
    778 F.3d 24 (1st Cir. 2015)..........................................................................................9

*Lavigne v. Great Salt Bay Community School Board*,
　　146 F.4th 115 (1st Cir. 2025)...........................................................................................9

*Liviz v. President and Fellows of Harvard College*,
　　2019 WL 608839 (D. Mass. Feb. 13, 2019) .....................................................................9

*Louis D. Brandeis Center For Human Rights Under Law v.
　　President and Fellows of Harvard College*,
　　2024 WL 4681802 (D. Mass. Nov. 5, 2024) ............................................................3, 5, 6

*Mahoney v. Foundation Medicine, Inc.*,
　　342 F. Supp. 3d 206 (D. Mass. 2018) ..............................................................................6

*Mandel v. Board Of Trustees Of California State University*,
　　2018 WL 5458739 (N.D. Cal. Oct. 29, 2018)...................................................................4

*McCabe v. Ford Motor Company*,
　　774 F. Supp. 3d 349 (D. Mass. 2025) ............................................................................10

*McCants v. O'Leary*,
　　2013 WL 5726144 (D. Mass. Oct. 17, 2013)....................................................................9

*Merisier v. Ellender*,
　　197 F. Supp. 3d 310 (D. Mass. 2016) ...........................................................................8, 9

*Rice v. President and Fellows of Harvard College*,
　　663 F.2d 336 (1st Cir. 1981)............................................................................................9

*Roe v. Lincoln-Sudbury Regional School District*,
　　2021 WL 1132256 (D. Mass. Mar. 24, 2021)..................................................................2

*Salem v. Stoneham Police Department*,
　　752 F. Supp. 3d 282 (D. Mass. 2024) ..............................................................................8

*Stand With Us Center For Legal Justice v. Massachusetts Institute Of Technology*,
　　___ F. 4th ___, 2025 WL 2962665 (1st Cir. Oct. 21, 2025).................................1, 4, 5, 10

*Warman v. Mount St. Joseph University*,
　　144 F.4th 880 (6th Cir. 2025) .......................................................................................8, 9

*Wentworth Precious Metals, LLC v. City of Everett*,
　　2013 WL 441094 (D. Mass. Feb. 4, 2013) ....................................................................10

*Ziglar v. Abbasi*,
　　582 U.S. 120 (2017)........................................................................................................10

Mr. Segev's opposition brief is more notable for what it does not say than for what it does. Tacitly acknowledging that he cannot contend with the First Circuit's recent decision in *Stand With Us Ctr. For Legal Just. v. Mass. Inst. Of Tech.*, ___ F. 4th ___, 2025 WL 2962665 (1st Cir. Oct. 21, 2025), he ignores it.  And while the Court should accept well-pleaded allegations and draw reasonable inferences in Mr. Segev's favor at the motion to dismiss stage, it need not—and should not—credit conjecture or strain to draw unreasonable inferences to save a defective complaint.  Nor should it heed Mr. Segev's demand to impose his preferred viewpoint (and disciplinary outcome) on Harvard through "judicial fiat."  *Stand With Us*, 2025 WL 2962665, at *11.  Instead, the Court should dismiss Mr. Segev's claims with prejudice.

## I.     MR. SEGEV FAILS TO PLEAD A TITLE VI CLAIM

### A.     Mr. Segev Cannot Resuscitate His Deliberate Indifference Claim

In the face of multiple pleading defects, *see* Br. 5-12, Mr. Segev distorts the facts and misrepresents—or simply ignores—the law.

*First*, although Mr. Segev does not dispute the high threshold for Title VI claims based on a single alleged incident of peer-on-peer harassment, *see* Opp. 11 & n.4, he fails to demonstrate that the October 18 incident meets that exacting standard, instead falling back on the conclusory assertion that this particular single incident is sufficient, Opp. 11.  Mr. Segev does not attempt to explain how the facts alleged about that single, short-lived event—shouting and some brief instances of non-injurious physical contact, FAC ¶¶ 143-159—could be "vile enough" to have a systemic effect on his educational experience.  *Compare* Opp. 11, *with* Br. 6-7; *see also HB v. Monroe Woodbury Cent. Sch. Dist.*, 2012 WL 4477552, at *17 (S.D.N.Y. Sept. 27, 2012) ("[I]t is simply not plausible that repeated instances of name-calling and threats and one shove and one fight over the course of two-plus months constituted behavior so 'severe, pervasive, and objectively offensive' that LB was effectively denied access to the School's resources and

opportunities (even assuming that all of the misconduct was gender-based)." (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651 (1999))). Instead, Mr. Segev attempts to distinguish cases that dealt with speech rather than conduct. *See* Opp. 11 n.4. But Mr. Segev ignores that—as multiple in-district cases explain—cases where a single-incident claim has proceeded "generally involve" allegations of sexual assault, *Coucelos v. City of Woburn*, 2024 WL 4309378, at *7 (D. Mass. June 18, 2024); *see also Roe v. Lincoln-Sudbury Reg. Sch. Dist.*, 2021 WL 1132256, at *24 (D. Mass. Mar. 24, 2021) (collecting cases), which are plainly more severe than his allegations of non-injurious assault.

*Second*, Mr. Segev's allegations beyond the October 18 incident are lacking. He first tries to build up allegations of online activity that occurred afterward. *See* Opp. 5-6, 10, 12. Putting aside his failure to allege that Harvard was aware of these posts, *see* Br. 7-8, Mr. Segev tries to frame these statements as something they are not: personal harassment. Opp. 12. But the actual statements, incorporated in the Amended Complaint by reference, refute his assertion. *See, e.g.*, FAC ¶ 165 n.31. The Court need not deal in inferences—reasonable or unreasonable—when the alleged facts so flatly contradict Mr. Segev's narrative.[1]

---

[1] Mr. Segev distorts a statement attributed to "Harvard Faculty and Staff for Justice in Palestine," FAC ¶ 165 n.31, describing it as "a public statement blaming Mr. Segev for being attacked, because his presence made the protesters feel 'unsafe' and 'frightened' … [and that] called for the assaulters to be absolved because of their 'dark skin,'" Opp. 5, further claiming that it, "said his Jewish presence was 'frightening,'" Opp. 12, and that it characterized him as "a 'frighten[ing]' Jew," Opp. 16. In fact, the statement in question (1) does not mention Mr. Segev by name, (2) does not mention his ethnicity, religion, or national origin, (3) used the words "unsafe" and "frightened" in relation to students' perception that the filming was "a threat to publicize their identities," and (4) focuses on questioning whether another student was being "singled out from the other protesters as a threat" because of his "dark skin." As to the handful of other statements alleged, FAC ¶¶ 160-166, Mr. Segev notably does not claim that any of these statements—which were similarly focused on the other students and not on Mr. Segev—were directed at him.

Perhaps recognizing that the October 18 incident alone will not suffice, Mr. Segev attempts to sweep in a purported "*overall* environment" of events that predate his time at Harvard or that he did not experience. Opp. 11.[2] To that end, Mr. Segev retreads a litany of allegations copied from other lawsuits arguing that reliance on these allegations is proper because he "is a member of Harvard's Jewish community, and he suffered … just as much as other Jewish Students." Opp. 10 (citing *Kestenbaum v. President & Fellows of Harvard Coll.*, 743 F. Supp. 3d. 297 (D. Mass. 2024), and *Louis D. Brandeis Ctr. For Human Rts. Under Law v. President & Fellows of Harvard Coll.*, 2024 WL 4681802 (D. Mass. Nov. 5, 2024)).[3] Those cases, however, involved organizational plaintiffs (with multiple members who alleged they experienced many of the incidents) and claims for injunctive relief, both of which this Court found arguably made such incidents relevant. *Cf. Kestenbaum*, 743 F. Supp. at 308 n.10. Here, Mr. Segev seeks only "economic damages," which can only be based on "personal harms" he purportedly experienced. *See id.* at 306 n.7. He cannot claim to have suffered "personal harms," let alone "damages," based on events he did not experience.

*Third*, the threadbare allegations of the complaint cannot support the inference that the October 18 incident occurred *because of* Mr. Segev's membership in a protected class. Opp. 12. The opposition asserts that Mr. Segev was "visibly Jewish and wearing a blue bracelet connected to Israel." *Id.* The first of these claims—that "Mr. Segev was visibly Jewish"—appears nowhere in his 126-page Amended Complaint, *see generally* FAC, and is unexplained, subjective, and non-

---

[2]     Mr. Segev's opposition misstates the year of his matriculation, Opp. 3, which occurred in the Fall of 2023.

[3]     Mr. Segev also mischaracterizes those rulings, stating that this Court "has already held that other Jewish students were harmed by Harvard's deliberate indifference to antisemitism," Opp. 25, when, in fact, this Court held only that the complaints in those cases contained sufficient allegations to partially survive a motion to dismiss for those plaintiffs.

factual. As to the second (the bracelet), Mr. Segev has no response to the point that "the Amended Complaint contains no allegations that the individuals involved—or anyone else—would or should have understood the bracelet to be connected to Israel." Br. 7. Nor can Mr. Segev's subjective characterization of a keffiyeh as "anti-Jewish" support an inference of "discriminatory malice." *Compare* Opp. 5 n.2, 12, *with Stand With Us*, 2025 WL 2962665, at *12 (rejecting the "theory that [plaintiffs] can dictate the interpretation of the protesters' speech in order to suppress it").[4] At bottom, Mr. Segev is asking this Court to infer discrimination based not on the facts he has alleged but on his own conclusion that it occurred, in direct contravention of the First Circuit's recent decision. *Stand With Us*, 2025 WL 2962665, at *11 ("[C]onclusory allegations of antisemitic animus … are 'not entitled to be assumed true.'").

*Fourth*, Mr. Segev has no factual response to Harvard's argument that he does not identify a single lost educational opportunity. Rather, he asserts that the altercation took an "emotional toll," pointing to general allegations that he did not feel supported, did not feel comfortable participating in certain activities, and "was often unable to focus, study or perform his coursework to the best of his ability." Opp. 8, 15. These allegations are "fatally vague," *Mandel v. Bd. Of Trs. Of Cal. State Univ.*, 2018 WL 5458739, at *25-26 (N.D. Cal. Oct. 29, 2018), and do not show any opportunity lost, much less that Mr. Segev was "effectively compelled to withdraw." *See Haywood v. Fitchburg Pub. Schs.*, 2025 WL 2734748, at *6 (D. Mass. Sept. 25, 2025). To the contrary, Mr. Segev graduated from Harvard Business School with high distinction in the customary two years.

---

[4]   The First Circuit also made clear that Title VI does not require a university to take action that would violate the First Amendment. *Id.* at *6 ("[W]e do not construe Title VI as requiring a university to quash protected speech."); *id.* at *7-9 ("[T]he First Amendment erects safeguards that limit the ability of the government or private plaintiffs to punish MIT for not restricting more severely the student protestors' protected speech.").

*Finally*, Mr. Segev ignores the governing legal framework in asserting that the only reasonable response to the altercation would have been the expulsion of other students. Opp. 13, 14. This is contrary to all applicable precedent. *See, e.g.*, *Stand With Us*, 2025 WL 2962665, at *16 ("Title VI does not ... entitle students to their preferred 'remedial demands.'"); *see also Davis*, 526 U.S. at 648 ("[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators."); *Doe v. Emerson Coll.*, 271 F. Supp. 3d 337, 355 (D. Mass. 2017) ("Title IX does not guarantee that an investigation will yield the outcome that a complainant desires."). Mr. Segev further complains that Harvard did not act on his May 2025 "non-anonymous" NDAB complaint—filed mere days before both he and the other students were scheduled to graduate (and a full year after he began litigating against Harvard in the *Brandeis Center* case)—because it had already been considered in another forum. Opp. 6, 14. Not only was that outcome consistent with the NDAB, Br. 17; *infra* at 7, it was also reasonable, *see Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 174 (1st Cir. 2007), *rev'd on other grounds*, 555 U.S. 246 (2009) ("[I]n situations involving charges of peer-on-peer harassment, a … school has obligations not only to the accuser but also to the accused."). Mr. Segev's subjective dissatisfaction with the actions Harvard took, Opp. 13-14, does not demonstrate deliberate indifference. *See, e.g.*, *Stand With Us*, 2025 WL 2962665, at *14-16 ("[C]laim that MIT 'dragged its feet,' 'took only minimal action' and 'failed to discipline' student protestors" insufficient to "subject a private entity to damages liability"); *Doherty v. Am. Int'l Coll.*, 2019 WL 1440399, at *5 (D. Mass. Mar. 31, 2019) ("A school satisfies its obligations if it engages in a reasonable process for investigating and addressing claims of [] harassment." (quoting *Doe*, 271 F. Supp. 3d at 356)).

**B.    Mr. Segev Fails To Adequately Allege A Title VI Direct Discrimination Claim**

Mr. Segev contends that he need not allege a direct comparator for his direct discrimination claim to survive the motion to dismiss stage. Opp. 15. It is true that where a plaintiff pleads a

claim of direct discrimination based on facts that suggest discrimination under the circumstances, a comparator may not be necessary. *Id.* (citing cases). But no such facts are alleged here. *See* Opp. 16 (discussing the choices by different Harvard presidents to fly or not fly certain national flags). Moreover, Mr. Segev's complaint—as was the case in *Kestenbaum* and *Brandeis Center*— is explicit in alleging direct discrimination on a "disparate treatment" theory as compared to "similarly situated non-Jewish, non-Israeli" classmates, FAC ¶ 464, and contains fifty paragraphs intended to provide those comparators, FAC ¶¶ 286-335. Mr. Segev cannot now disclaim reliance on such a theory simply because he cannot meet it.

Having failed to adequately plead his claim, Mr. Segev seeks license to conduct a fishing expedition. Opp. 16-17. But the cases he cites—one on a motion to compel discovery and the others outside the context of a discrimination claim—do not support this request. *See Brandeis Ctr.*, 2024 WL 4681802, at *4 ("In the absence of any similarly situated comparator, the claim must be dismissed."); *Kestenbaum*, 743 F. Supp. 3d at 310-11 (same).

## II. MR. SEGEV CONCEDES THAT HE DOES NOT AND CANNOT IDENTIFY A SPECIFIC CONTRACT OR PROMISE THAT HARVARD ALLEGEDLY BREACHED

Mr. Segev does not meaningfully address Harvard's argument that his breach claims must be dismissed because he failed to "describ[e], with substantial certainty, the specific contractual promise" that Harvard allegedly "failed to keep." *Alicea v. Machete Music*, 744 F.3d 773, 783 (1st Cir. 2014) (cleaned up). Mr. Segev does not even cite, let alone address, this binding First Circuit authority. *See generally* Opp. 17-20. The Court can end its inquiry there. *See Mahoney v. Found. Med., Inc.*, 342 F. Supp. 3d 206, 217 (D. Mass. 2018).

In any event, Mr. Segev implicitly concedes that he cannot meet this standard by refusing to identify a specific binding contractual promise between him and Harvard, continuing to rely on a grab-bag of policies without identifying which one forms the basis of his claim. *See* Opp. 18

(naming the "NDAB," "USSR," and unidentified "other policies"). Unlike the plaintiffs in this Court's prior decision on which Mr. Segev relies, he is suing only on his own behalf, yet has not identified any specific policy Harvard allegedly breached *with respect to him*. He even goes so far as to claim that his contract claim arises from an alleged reasonable expectation "that Harvard would punish discriminatory conduct, discipline those who engage in 'unwelcome and offensive conduct that is based on an individual or group's protected status,' and follow specific procedures when students lodge complaints regarding policy violations," Opp. 18, an expectation that he apparently asserts the right to vindicate whether or not he has personal involvement or first-hand knowledge of the conduct in question. And, to support this claim, Mr. Segev cites a smattering of paragraphs summarizing various policies, *id.* (citing FAC ¶¶ 250-285, 471-472), again refusing to identify which policies he contends were breached.

Turning to the NDAB, Mr. Segev argues that the disclaimer language in the NDAB policy is not sufficient to defeat a breach of contract claim, citing *Kestenbaum*. Opp. 19-20. But *Kestenbaum* did not consider this disclaimer language, and, again, Mr. Segev does not explain in the first place what part of the NDAB forms the basis of his breach claims, Opp. 20. Mr. Segev makes no real effort to contest Harvard's compliance with its policy, *see* Br. 17, other than to misleadingly cite his May 2025 NDAB complaint, *compare* Opp. 20 n.6, *with supra* at 5, which Harvard handled consistent with the NDAB, Br. 17.

In another variation on the theme, Mr. Segev does not meaningfully defend his implied covenant claim, failing to allege any contract to which this implied covenant attached (or how it was breached). *See* Opp. 18-19. But implied covenant claims are "distinct from simple breach of contract claims and require additional factual allegations," *Christensen v. Kingston Sch. Comm.*, 360 F. Supp. 2d 212, 229 (D. Mass. 2005). Mr. Segev has alleged none, so this claim must fail.

*See, e.g.*, *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 337-338 (1st Cir. 2022) (affirming dismissal because plaintiff "does not identify a distinct basis" for breach of implied covenant claim).

### III.  MR. SEGEV'S CIVIL RIGHTS AND CONSPIRACY CLAIMS FAIL SEVERAL TIMES OVER

#### A.  Mr. Segev's Section 1983 Claim Finds No Support In The Cases He Cites

Mr. Segev focuses solely on showing that Defendants are state actors, Opp. 21-23, failing to respond substantively to any of Harvard's other bases for dismissal.  Br. 20.  In any event, Mr. Segev's argument fails for multiple reasons.

*First*, Mr. Segev cannot state a § 1983 claim against HUPD because even if individual HUPD *officers* could be considered state actors in certain circumstances, that would not transform HUPD into a state actor.  Br. 18-19.  Mr. Segev glosses over this argument by speculating that HUPD could become a state actor by "jointly participat[ing] with those [unnamed actors] that did [exercise state power]."  Opp. 22.  Hypotheticals cannot save a complaint lacking sufficient factual allegations.  But, even if Mr. Segev's alternate scenario were true (it is not), *Warman v. Mount St. Joseph University*, 144 F.4th 880 (6th Cir. 2025), relied upon in the opposition brief, Opp. 21, disposes of this argument.  There, the Sixth Circuit explained that even if certain campus police officers could be state actors in certain circumstances, the department could not be sued under § 1983 because it was equivalent to a sub-unit of a municipality.  *Warman*, 144 F.4th at 891-892; *see also Fleck v. Trs. of Univ. of Pa.*, 995 F. Supp. 2d 390, 402 (E.D. Pa. 2014) ("[T]he Penn Police Department is not an entity capable of being sued.  Rather the University ... is the proper defendant for purposes of a § 1983 suit.").[5]

---

[5]  That a police department is not a proper party for a § 1983 suit is also well-established in this district.  *See, e.g.*, *Salem v. Stoneham Police Dep't*, 752 F. Supp. 3d 282, 290 (D. Mass. 2024) (discussing "the overwhelming caselaw indicating police departments are not independent legal entities"); *Merisier v. Ellender*, 197 F. Supp. 3d 310, 320 (D. Mass. 2016) ("Since [the Mansfield

*Second*, Mr. Segev's § 1983 claim against Harvard must also be dismissed because Harvard is not a state actor subject to suit under § 1983. *Rice v. President & Fellows of Harvard Coll.*, 663 F.2d 336, 337 (1st Cir. 1981); *Liviz v. President & Fellows of Harvard Coll.*, 2019 WL 608839, at *1 (D. Mass. Feb. 13, 2019); *see also Klunder v. Brown Univ.*, 778 F.3d 24, 33 (1st Cir. 2015) (Brown University is not a state actor). And even if Harvard were a state actor, Harvard could only be held liable under a *Monell* theory of liability, *see also Warman*, 144 F.4th at 891 n.4, which Mr. Segev has not alleged, *see* FAC ¶¶ 499-514. Therefore, his § 1983 claim against Harvard must also be dismissed.

*Third*, Mr. Segev's § 1983 claim against Mr. Clay and Ms. Weenick must be dismissed because both individuals would be protected by immunity. Br. 20. Moreover, Mr. Segev has no response to the fact that his "information and belief" allegations with respect to Ms. Weenick, FAC ¶ 159, are not entitled to be credited when they comprise nothing more than "pure speculation," *Lavigne v. Great Salt Bay Cmty. Sch. Bd.*, 146 F.4th 115, 127 (1st Cir. 2025).

*Fourth*, Mr. Segev's alleged Equal Protection Clause violation, *see* FAC ¶¶ 504-510, fails under Mr. Segev's own cited cases. In *Lu v. Smith*, the court explained that a plaintiff must meet the "'threshold requirement'" of showing "disparate treatment," by "plausibly demonstrating that compared with others similarly situated" she was treated differently. 2016 WL 4595206, at *3 (D. Mass. Sept. 2, 2016) (cleaned up). Mr. Segev has not met this standard. *See supra* 5-6.

### B. Mr. Segev Concedes That He Has Failed To Allege Any Conspiracy

In response to Harvard's multiple arguments for dismissal of both conspiracy claims, Br. 21-23, Mr. Segev's sole rejoinder is that the "intracorporate conspiracy doctrine" does not apply

---

Police Department] is not a separate entity from the Town, the claims against the Police Department will be dismissed."); *McCants v. O'Leary*, 2013 WL 5726144, at *2 (D. Mass. Oct. 17, 2013) (Brookline Police Department not subject to suit under § 1983).

to his claims. Opp. 23-24. He is wrong, but the court need not reach or decide that issue because Mr. Segev fails to address Harvard's other arguments for dismissal of the conspiracy claims, which independently require dismissal: (1) the conspiracy claims are based on conclusory allegations without any supporting facts; (2) the Complaint fails to allege any conspiratorial purpose or intent; and (3) the Complaint fails to allege any underlying tort for his state-law conspiracy claim. *See* Br. 22-23. In any event, Mr. Segev's claim that the intracorporate conspiracy doctrine is "inapplicable in the civil rights context," Opp. 23, is incorrect. Multiple cases within the First Circuit have applied this doctrine in the civil rights context. *See* Br. 21 (citing, *inter alia*, *Wentworth Precious Metals, LLC v. City of Everett*, 2013 WL 441094, at *14 (D. Mass. Feb. 4, 2013) (rejecting federal and state civil rights conspiracy claims because employees cannot conspire with their employer)); *see also Hayes v. Town of Dalton*, 2022 WL 17177729 (D. Mass. Nov. 23, 2022). Even assuming that Mr. Segev had adequately alleged a civil conspiracy claim (he hasn't), and that he is right that the Harvard employees here are state actors (they aren't), they would be entitled to qualified immunity. *See Ziglar v. Abbasi*, 582 U.S. 120, 153-155 (2017).

### IV. DISMISSAL WITH PREJUDICE IS PROPER

Mr. Segev's assertion that Harvard has waived any argument for dismissal with prejudice is wrong. His sole citation in support of that claim is a case brought by a *pro se* plaintiff where dismissal was sought under Fed. R. Civ. P. 4(m) for issues related to service. Opp. 25. That case is inapplicable, and dismissal with prejudice is appropriate given that Mr. Segev has had multiple opportunities (and over 500 paragraphs) to adequately plead his claims. *See, e.g.*, *McCabe v. Ford Motor Co.*, 774 F. Supp. 3d 349, 367 (D. Mass. 2025) ("It is well settled that in the absence of a clear statement to the contrary, a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is presumed to be with prejudice." (cleaned up)); *see also Stand With Us*, 2025 WL 2962665, at *18 (affirming denial of request for leave to replead).

DATED:  November 25, 2025

                    Respectfully Submitted,

                    */s/ Felicia H. Ellsworth*
                    Felicia H. Ellsworth, BBO #665232
                    Jacob Tuttle Newman, BBO #712110
                    WILMER CUTLER PICKERING
                      HALE AND DORR LLP
                    60 State Street
                    Boston, MA 02109
                    Tel:  (617) 526-6000
                    Fax: (617) 526-5000
                    Felicia.Ellsworth@wilmerhale.com
                    Jacob.TuttleNewman@wilmerhale.com

*Counsel for President and Fellows of Harvard College, Meredith Weenick, Victor A. Clay, and Harvard University Police Department*

Mark A. Kirsch (*pro hac vice*)
Gina Merrill (*pro hac vice*)
KING & SPALDING LLP
1290 Avenue of the Americas
14th Floor
New York, NY 10104
Tel: (212) 790-5329
Fax: (212) 556-2222
mkirsch@kslaw.com
gmerrill@kslaw.com

*Counsel for President and Fellows of Harvard College*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2025, I caused this document to be filed through the CM/ECF system, where it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ *Felicia H. Ellsworth*

Felicia H. Ellsworth